**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JERRY CLABORN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-319** |
| **ROBERT TANNER, ET AL.** | **SECTION "G"(1)** |

## REPORT AND RECOMMENDATION

Plaintiff, Jerry Claborn, a state inmate, filed this *pro se* civil action against Robert Tanner,

Keith Bickham, Ronald Branch, Johnny Gerald, Jody Knight, Thomas Mitchell, Thomas Schuler,

and James M. LeBlanc. The lawsuit, brought pursuant to 42 U.S.C. § 1983, is based on an incident

which occurred on June 9, 2011, as plaintiff was on a work detail in a blueberry patch. In the

complaint, plaintiff alleges:

> 17.  ... [A]s plaintiff was performing his assigned tasks, he witnessed Sgt. Thomas Schuler get off his assigned All-Terrain-Vehicle (ATV), while armed with his service weapon, and walk inside the secure perimeter. Having knowledge that this was highly unusual, plaintiff became noticeably worried, but continued his assigned task of picking blueberries.
>
> 18.  Sgt. Schuler continued walking erratically amongst the offenders without any apparent purpose. Suddenly, without any prior notice or warning, Schuler began shouting profanity toward plaintiff and other offenders, "You come hear! You with the glass on you're a#s*o(!. Sgt. Schuler continued, "I'm talking to you now offender, make your move! Hey, a*%h#*&, you gonna make me come get you?" At this point, it was obvious to all present that Sgt. Schuler was incoherent and delusional, since there was no offender in the area of his immediate attention.
>
> 19.  Suddenly, without notice or warning, Schuler drew his weapon, loaded it and aimed it back and forth from an empty area to plaintiff and the others. Immediately, plaintiff and the other offenders began scrambling to get out of

the line of fire. Taking notice of the situation, Sgt. Janet McBeth verbally instructed all offenders to move away slowly in an orderly fashion.

20.    Sgt. McBeth, gripping her own weapon, inquired to Sgt. Schuler as to what he was doing. Sgt. McBeth spoke in a loud tone assuring Schuler there was no offender in the immediate wooded area, as all offenders were accounted for. She instructed him to holster his weapon. Unfortunately, her efforts were unsuccessful, as Schuler continued to brandish his weapon. Sgt. McBeth immediately radio for assistance from all security units.[1]

Plaintiff claims that his safety was jeopardized in this incident and that it has caused him to suffer anxiety, stress, and trouble sleeping. Plaintiff filed an administrative grievance concerning the incident; however, officials stated that no further relief was warranted in light of the fact that Schuler voluntarily resigned after the incident.

## I. Standards of Review

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law further requires:

On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

---

[1]    Rec. Doc. 1, p. 7.

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
> (i) is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re* Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted). The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted

unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citations and quotation marks omitted).

Although broadly construing plaintiff's complaint,[2] the undersigned recommends that, for the following reasons, the complaint be dismissed as frivolous and/or for failure to state a claim on which relief may be granted.

## II. Plaintiff's Federal Claims

In this lawsuit, plaintiff asserts various federal claims against the defendants for their roles in this incident and the way it was handled. He states his claims as follows:

36. The actions or inaction of defendants Robert C. Tanner, Keith Bickham and Ronald Branch, in failing to immediately intervene or take disciplinary action, proximately caused plaintiff to continue to be subjected to cruel and unusual punishment, in violation of the Eighth Amendment. The same were deliberately indifferent to plaintiff's safety concerns in allowing Thomas Schuler to remain on-duty, without a complete investigation into the matter.

37. The actions of defendant Thomas Schuler, in brandishing a loaded weapon at plaintiff while yelling profane insults and threatening to shoot him, was reckless, wanton and deliberately indifferent to plaintiff's safety concerns, in violation of the Eighth Amendment.

38. The actions of defendant Jody Knight, in failing to properly train and/or supervise Thomas Schuler, proximately caused plaintiff to be subjected to cruel and unusual punishment, in violation of the Eighth Amendment. Defendant Knight was deliberately indifferent to plaintiff's safety by returning Schuler his weapon, which proximately caused plaintiff to be at greater risk of harm, in violation of the Eighth Amendment.

---

[2]     The Court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

39.     The actions of defendant Thomas Mitchell, in attempting to undermine the grievance process and effect future litigation by manipulating plaintiff to exclude critical facts from his written statement, was obstruction meant to interfere with any probable litigation or access to the court, in violation of the First Amendment.

40.     The actions of defendants Ronald Branch and Johnny Gerald, in attempting to intimidate witnesses and weaken factual statements was action intended to curb potential litigation, alleviate liability and curb access to the court, in violation of the First Amendment.

41.     The failure of defendant James M. LeBlanc to intervene and/or take corrective action to curb clearly unreasonable and unconstitutional actions proximately caused the above-described unconstitutional practices.[3]

All of these claims are subject to immediate dismissal for the following reasons.

First, as to the claim against Schuler, plaintiff simply is not entitled to any form of relief. Schuler has resigned, and he therefore is no longer in a position to cause plaintiff harm. As a result, any request for declaratory or injunctive relief against Schuler is moot. See Carter v. Hubert, No. 11-30255, 2011 WL 5138674, at *2 (5th Cir. Oct. 31, 2011); Barnes v. Pierce, 338 Fed. App'x 373, 376 (5th Cir. 2009). As to any request for compensatory damages, federal law provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Because plaintiff has suffered no physical injury as result of this incident, he is barred from recovering compensatory damages. Herman v. Holiday, 238 F.3d 660, 665-66 (5th Cir. 2001). As to any request for punitive damages, such damages simply are not warranted under the facts alleged. "Under § 1983, punitive damages may be awarded only if the

_____

[3]     Rec. Doc. 1, pp. 10-11.

5

official conduct is motivated by evil intent or demonstrates reckless or callous indifference to a person's constitutional rights." Sockwell v. Phelps, 20 F.3d 187, 192 (5th Cir. 1994) (quotation marks omitted). Here, there is no indication that Schuler's erratic actions resulted from an evil intent or reckless and callous indifference. Quite the contrary, even plaintiff alleges that Schuler was incoherent and delusional at the time.[4]

Second, plaintiff's claims against the supervisory officials clearly have no merit. The United States Fifth Circuit Court of Appeals has explained:

> A supervisory official may be held liable only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury. In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor acted, or failed to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates. A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights. A supervisor may also be liable for failure to supervise or train if: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.

Porter v. Epps, 659 F.3d 440, 446 (5th Cir. 2011) (citations, quotation marks, brackets, and ellipsis omitted). The Fifth Circuit has also explained:

> Deliberate indifference is a stringent standard of fault, requiring proof that [an official] disregarded a known or obvious consequence of his action. Deliberate indifference implies an official's actual knowledge of facts showing that a risk of serious harm exists as well as the official's having actually drawn that inference. Deliberate indifference is more than mere negligence or even gross negligence. Proof of deliberate indifference normally requires a plaintiff to show a pattern of

---

[4]    Rec. Doc. 1, p. 7, ¶ 18.

> violations and that the inadequate training or supervision is obvious and obviously
> likely to result in a constitutional violation.

Brown v. Callahan, 623 F.3d 249, 255 (5th Cir. 2010) (citations and quotation marks omitted), cert. denied, 131 S.Ct. 2932 (2011).

In the instant case, plaintiff acknowledges that policies and practices were in place to prevent such interactions between inmates and guards as occurred here.[5] Further, the incident in question obviously did not result from a failure to train or supervise Schuler; rather, plaintiff himself indicates that Schuler simply became delusional.[6] As plaintiff further acknowledges, McBeth and others then immediately intervened to take control of the situation and handled the matter without injury to anyone.[7] The incident was then investigated, not ignored.[8] Schuler thereafter resigned and no longer is in a position to repeat his actions.[9] Plaintiff has received psychological counseling and treatment for his emotional distress.[10] These facts show that officials did not act in an unconstitutional manner. Even if the officials could have done more, or made better choices, that simply is not the test. Rather, as noted, the determinative issue is whether they acted with "deliberate indifference" and in a manner that was obviously likely to result in a constitutional violation. They clearly did not.

---

[5] Rec. Doc. 1, pp. 7-8, ¶¶ 15 and 21.

[6] Rec. Doc. 1, p. 7, ¶ 18.

[7] Rec. Doc. 1, pp. 7-8, ¶¶ 20 and 22.

[8] Rec. Doc. 1, pp. 8-9, ¶¶ 23-24 and 26.

[9] Rec. Doc. 1, p. 10, ¶ 32.

[10] Rec. Doc. 1, p. 10, ¶ 33.

Third, as to plaintiff's claim that the defendants acted inappropriately in processing and responding to his administrative grievances concerning the incident, that claim also fails. Simply put, an inmate does not have a constitutional right to an adequate and effective grievance procedure or to have his complaints investigated and resolved to his satisfaction. Propes v. Mays, 169 Fed. App'x 183, 184-85 (5th Cir. 2006); Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005); Davis v. St. Charles Parish Correctional Center, Civ. Action No. 10-98, 2010 WL 890980, at *5 (E.D. La. Mar. 8, 2010); Carter v. Strain, Civ. Action No. 09-15, 2009 WL 3231826, at *3 (E.D. La. Oct. 1, 2009); Tyson v. Tanner, Civ. Action No. 08-4599, 2009 WL 2883056, at *5 (E.D. La. Aug. 25, 2009); George v. Travis, Civ. Action No. 07-986, 2007 WL 1428744, at *7 (E.D. La. May 10, 2007); Mahogany v. Miller, Civ. Action No. 06-1870, 2006 WL 4041973, at *1 (E.D. La. Aug. 3, 2006), appeal dismissed, 252 Fed. App'x 593 (5th Cir. 2007).

Fourth, plaintiff's claim that the defendants' alleged interference during the investigation and grievance process violated his right of access to the courts fares no better. Regarding such claims, the United States Fifth Circuit Court of Appeals has explained:

> It is clearly established that prisoners have a constitutionally protected right of access to the courts. The Supreme Court has stated that this right of access is founded in the Due Process Clause and assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights. The Supreme Court has also viewed the right of access to the courts as one aspect of the First Amendment right to petition the government for grievances. While the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court.

Brewer v. Wilkinson, 3 F.3d 816, 820-21 (5th Cir. 1993) (citations and quotation marks omitted). The defendants' alleged actions in this case in no way impeded plaintiff's ability to prepare and file this or any other lawsuit. Accordingly, his "access to courts" claim is frivolous.

### III. Plaintiff's State Law Claims

Lastly, the Court notes that plaintiff indicates in the complaint that he is also asserting claims under state law. However, where, as here, a plaintiff's federal claims are dismissed, it is appropriate for the Court to decline to exercise supplemental jurisdiction over any of the state law claims. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction."); see also Jackson v. Mizzel, 361 Fed. App'x 622, 627 (5th Cir. 2010) ("Because [the plaintiff] states not one valid federal claim, the district court properly declined jurisdiction over his Louisiana causes of action."); Bass v. Parkwood Hospital, 180 F.3d 234, 246 (5th Cir. 1999) ("When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims."). If he desires, plaintiff may attempt to assert any such state law claims in state court.

### **RECOMMENDATION**

It is therefore **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous and/or for failure to state a claim on which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

9

court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[11]

New Orleans, Louisiana, this twenty-second day of February, 2012.

**SALLY SHUSHAN
UNITED STATES MAGISTRATE JUDGE**

---

[11]    <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.