UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JERRY CLABORN                                            CIVIL ACTION

VERSUS                                                   NO.  12-0319

ROBERT TANNER, ET AL.                                    SECTION: "G"(1)

### ORDER AND REASONS

This civil rights case arises from a June 2011 incident during which a state prison guard allegedly waved his gun at prisoners serving on a work detail. Before the Court are Plaintiff Jerry Claborn's objections[1] to the February 22, 2012, Report and Recommendation[2] of United States Magistrate Judge Sally Shushan. The magistrate judge recommends that the Court dismiss with prejudice Claborn's complaint against Defendants Robert Tanner, Keith Bickham, Ronald Branch, Johnny Gerald, Jody Knight, Thomas Mitchell, Thomas Schuler, and James LeBlanc (collectively, "Defendants"). The Court has read and considered the magistrate judge's Report and Recommendation, Claborn's objections, the record, and the applicable law. For the reasons that follow, the Court will adopt the magistrate judge's Report and Recommendation and dismiss Claborn's federal claims with prejudice and dismiss his state-law claims without prejudice.

---

[1] Rec. Doc. 5.

[2] Rec. Doc. 4.

## I. Background[3]

Claborn is an inmate in the B.B. "Sixty" Rayburn Correctional Center ("RCC") in Angie, Louisiana.[4] He filed this *pro se* complaint *in forma pauperis* against Defendants on February 1, 2012.[5] Defendant Tanner was the RCC warden during the relevant time at issue, and Defendant LeBlanc was the Secretary for the Louisiana Department of Public Safety and Corrections.[6] The remaining defendants all were officers of varying rank at RCC.[7]

Claborn was on a work detail in the RCC's "blueberry patch" on the morning of June 9, 2011.[8] At some point that morning, Defendant Schuler, armed with his service weapon, walked "erratically" toward and around a group of several inmates "without any apparent purpose." [9] Schuler then "began shouting profanity" at Claborn and the other inmates and drew his firearm "without notice or warning."[10] After loading his weapon, Schuler then "aimed it back and forth," with plaintiff and the other offenders in the line of fire.[11] Another correctional officer, one who is not a party to this case, inquired of Schuler as to what he was doing and assured Schuler that "all

---

[3] The following background derives from Taylor's complaint, and the Court will consider the allegations as true for the purposes of considering Taylor's objections.

[4] Rec. Doc. 1.

[5] *Id.*

[6] *Id.*

[7] *Id.* at pp. 5-6.

[8] *Id.* at p. 6.

[9] *Id.* at p. 7.

[10] *Id.*

[11] *Id.*

offenders were accounted for." She was unsuccessful at getting Schuler to holster his weapon so she used her radio to call for help.[12]

Schuler remained assigned to oversee the work detail the next day, June 10, 2011, and, as a result, several inmates refused to report to work.[13] Claborn "informed the staff members that he was suffering from anxiety, stress, as well has having trouble sleeping"[14] as a result of the incident from the day before. Nonetheless, "the staff members appeared uninterested in plaintiff's physical well-being, or his theory as to why the offender's [sic] refused to go to work with Schuler."[15]

 Magistrate Judge Shushan issued a Report and Recommendation on February 22, 2012, in which she recommended that this Court dismiss Claborn's claims with prejudice as frivolous and for failure to state a claim for which relief can be granted.[16] Claborn reports that he was served with the Report and Recommendation on February 24, 2012. He had fourteen (14) days from the date of service to file objections, or until March 9, 2013. Although filed with the Clerk of this Court on March 12, 2013, the date prison officials receive the complaint from the prisoner for mailing to the court is the time of filing for limitations purposes.[17] Claborn signed and dated his complaint on March 8, 2013, which is the earliest date appearing in the record on which he could have given the pleadings to prison officials for mailing to this Court. Thus his objections are deemed timely filed.[18]

---

[12] *Id.*

[13] *Id.* at p. 8.

[14] *Id.* at p. 9.

[15] *Id.*

[16] Rec. Doc. 4.

[17] *Medley v. Thaler*, 660 F.3d 833, 835 (5th Cir. 2011); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).
[18] Rec. Doc. 5 at p. 6.

## **II. Objections**

Claborn raises several objections to Magistrate Judge Shushan's Report and Recommendation. He first argues that she erroneously found that his request for declaratory and injunctive relief against Schuler is mooted by the fact that Schuler no longer works at RCC.[19] Claborn "concedes that he may not be entitled to compensatory damages, [but] he asserts that he is clearly entitled to nominal, declaratory, and injunctive relief."[20] Second, Claborn alleges that the Report and Recommendation overlooked the "clear and convincing evidence that [Schuler's] actions resulted from reckless and callous indifference to [Claborn's] safety" sufficient to warrant punitive damages.[21]

Third, Claborn challenges the conclusion in the Report and Recommendation that his claims against Schuler's supervisors were meritless.[22] He contends that prison officials may be liable for failure to act if such failure results in a constitutional violation, and he argues that the officials likewise may be liable if they knew or should have known that the officials "set in motion a series of events" that would cause a constitutional violation.[23] Therefore, Claborn alleges that Schuler's supervisors "proximately caused [Claborn's] safety to be jeopardized by Schuler" when Schuler was allowed "to remain on the gun line" and to escort the inmates after the alleged gun-waving incident.[24]

---

[19] *Id.* at p. 1.

[20] *Id.*

[21] *Id.* at p. 2.

[22] *Id.*

[23] *Id.* at pp. 2-3.

[24] *Id.* at p. 3.

Fourth, Claborn contends that Magistrate Judge Shushan improperly determined that he did not suffer physical harm and therefore cannot state a legal claim.[25] In particular, Claborn claims that he experiences "cold sweats, nervousness, anxiousness, and loss of sleep as a direct result of the incidents. These are obviously considered to be physical manifestations."[26] Fifth, Claborn argues that he is entitled to recover under a state-law claim for negligent infliction of emotional distress.

Sixth, Claborn argues that the Report and Recommendation erroneously found that Claborn "does not have a constitutional right to an adequate and effective grievance procedure or to have his complaints to investigated and resolved to his satisfaction."[27] Claborn claims that "well settled jurisprudence require that he exhaust available administrative remedies prior to" filing this action; therefore, alleged interference or attempted interference with that process "obviously contravened his First Amendment privileges."[28]

Seventh, and finally, Claborn asserts that Magistrate Judge Shushan exceeded her authority by finding facts that "were best to be determined by a trier-of-facts" and that his state-law claims "are clearly not frivolous."[29] He therefore requests that the Court at least "transfer [his case] to the appropriate state court of jurisdiction, or that the case be dismissed without prejudice[.]"[30]

---

[25] *Id.* at p. 4.

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.* at p. 5.

[30] *Id.*

## III. Law and Analysis

*A. Applicable Law*

### *1. Review of Magistrate Judge's Report and Recommendation*

When designated by a district court to do so, a United States magistrate judge may consider prisoner petitions challenging the conditions of confinement and recommend their disposition to the district court judge in accordance with the magistrate judge's findings of fact and determinations of law.[31] The district court must review the matter de novo upon any party's timely objection to the magistrate judge's Report and Recommendation.[32]

### *2. Standard of Review for Frivolousness*

A district court has broad discretion in determining the frivolous nature of a complaint filed by prisoners proceeding *in forma pauperis*.[33] A complaint is frivolous if it lacks an arguable basis in law or fact.[34] A claim has no arguable basis in law if "it is based on an indisputably meritless legal theory."[35] It lacks a basis in fact if "the facts alleged are clearly baseless."[36] If a court finds that his claims are frivolous, the court must dismiss the claims *sua sponte*.[37]

---

[31] 28 U.S.C. § 636(b)(1)(B).

[32] Fed. R. Civ. P. 72(b)(3).

[33] *See Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998); *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989).

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *See* 28 U.S.C. § 1915A, 42 U.S.C. § 1997e(c).

*B. Application*

   *1. Claborn's Alleged Violations of the Eighth Amendment*

Claborn raises several federal claims against Defendants. First, he claims that the failure of defendants Tanner, Bickham and Branch "to immediately intervene or take disciplinary action" against Schuler subjected Claborn to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.[38] Next, he seeks relief against Schuler for conduct alleged to be "reckless, wanton and deliberately indifferent" to Claborn's safety, also in violation of the Eighth Amendment.[39] Claborn further seeks relief against defendant Knight for failure to properly train Schuler.[40] Finally, Claborn seeks relief against LeBlanc for failure "to intervene and/or take corrective action to curb clearly unreasonable and unconstitutional actions" by the other defendants.[41]   Section 1983 provides a cause of action against anyone who deprives another of his constitutional rights while acting under color of state law.[42] It therefore "imposes liability for violations of rights protected by the *Constitution*, not for violations of duties of care arising out of tort law."[43] "Not every injury for which a state official is responsible is actionable under section 1983."[44] Accordingly, redress under section 1983 is limited "to police conduct that (1) caused at

---

[38] Rec. Doc. 1 at p. 10.

[39] *Id.* at p. 11.

[40] *Id.*

[41] *Id.*

[42] 42 U.S.C. § 1983.

[43] *Hinojosa v. City of Terrell*, 834 F.2d 1223, 1229 (5th Cir. 1988) (quoting *Baker v. McCollan*, 443 U.S. 137 (1979)) (emphasis in original).

[44] *Id.*

least meaningful injury, (2) was grossly disproportionate to the need presented, and (3) was motivated by malice."[45]

The Fifth Circuit has held that the brandishing of a gun by a law enforcement officer, by itself, is insufficient to support a claim of excessive force or violation of any constitutional right.[46] Moreover, 42 U.S.C. § 1997e(e) provides that an inmate cannot recover for "mental and emotional injury suffered while in custody without a prior showing of physical injury."

All of Claborn's claims derive from Schuler's alleged brandishing of his weapon at Claborn and other inmates. While Claborn alleges that as a result of the trauma of that experience he now suffers anxiety and stress and has trouble sleeping, these injuries do not constitute *physical* injuries under the statute.[47] It is clear that a prisoner's emotional distress arising from having a gun pointed at him is not a compensable injury under 42 U.S.C. § 1983 absent a showing of physical injury,[48] and Claborn has not claimed any such harm. Therefore, Claborn's claims arising under the Eighth Amendment are frivolous. Pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(1), and 42 U.S.C. § 1997e(c), they must be dismissed with prejudice.

---

[45] *Id.*

[46] *See Hinojosa*, 834 F.2d at 1229-30 (reversing jury verdict against officer where plaintiff offered no evidence of physical injury; noting that plaintiff's only potential injury, "temporary emotional distress, simply does not rise to a level that can be redressed for such a claim under section 1983"); *Gonzales v. Flanagan*, 102 F. App'x 404, 404 (5th Cir. 2004) (affirming qualified immunity for officer who had objectively reasonable basis for withdrawing her weapon and where plaintiff suffered no injury as a result of the show of force).

[47] *See Herman v. Holiday*, 238 F.3d 660, 665-66 (5th Cir. 2001) (fear of harm due to exposure to asbestos not sufficient); *see also*, *Alexander v. Tippah County*, 351 F.3d 626, 631 (5th Cir. 2003) (finding plaintiff's nausea to be *de minimis* physical injury insufficient to satisfy 42 U.S.C. § 1997e).

[48] *Hinojosa*, 834 F.2d at 1230.

### *2. Claborn's Claims Related to Grievance Procedures*

Claborn also alleges that defendant Mitchell violated Claborn's First Amendment rights by trying to "undermine the grievance process and effect [sic] future litigation by manipulating" Claborn to omit facts from Claborn's statement about the June 9, 2011, incident.[49] He likewise accuses defendants Branch and Gerald of engaging in conduct designed to "curb potential litigation . . . and curb access to the court, in violation of the First Amendment."[50] These claims may be construed to allege violations of Claborn's rights under the Due Process Clause and his right of access to the court guaranteed by the First Amendment right to petition the government for grievances.[51]

Prisoners such as Claborn have "a liberty interest only in freedoms from restraint . . . imposing atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[52] They do not have "a federally protected liberty interest in having [their] grievances resolved to [their] satisfaction."[53] Accordingly, Claborn's claims regarding the RCC officials' handling of his administrative grievances must be dismissed because, without an infringement upon a federally protected liberty interest, "any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless."[54]

---

[49] Rec. Doc. 1 at p. 11.

[50] *Id.*

[51] *See Brewer v. Wilkinson*, 3 F.3d 816, 820-21 (5th Cir. 1993) (citations and internal quotation marks omitted).

[52] *Geiger v. Jowes*, 404 F.3d 371, 374 (5th Cir. 2005).

[53] *Id.*

[54] *See id.*

Moreover, the Fifth Circuit has explained that while prisoners have a constitutional right of access to the courts under the First Amendment, this right has not been extended "to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court."[55] Claborn has not alleged any facts that suggest that officials at RCC have impeded his ability to prepare and transmit legal filings to this or any other court. Accordingly, Claborn's claims based upon an improper restriction of his access to courts lack any legal basis. The Court therefore must dismiss them pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(1), and 42 U.S.C. § 1997e(c).

### *3. Claborn's State-Law Claims*

Claborn also appears to allege violations of Louisiana law. While most of its focus is on the claims arising under the United States Constitution, the complaint states that this Court has "supplemental jurisdiction over plaintiff's state law tort claim."[56] As the magistrate judge here noted, it is appropriate for a court to decline to exercise supplemental jurisdiction over any state-law claims when it dismisses a plaintiff's federal claims.[57] Accordingly, while the Court will dismiss with prejudice all of Claborn's claims asserted under the United States Constitution, the Court declines to exercise jurisdiction over any of Claborn's claims under state law.

---

[55] *Brewer*, 3 F.3d at 820-21.

[56] Rec. Doc. 1 at p. 5. Moreover, in Claborn's objections to the Report and Recommendation, Claborn states that he has alleged a claim for negligent infliction of emotional distress under Louisiana law. Rec. Doc. 5 at p. 4.

[57] Rec. Doc. 4 at p. 9; 28 U.S.C. § 1367(c)(3).

## IV. Conclusion

For the foregoing reasons, the Court affirms the Magistrate Judge's Report and Recommendation. Accordingly,

**IT IS HEREBY ORDERED** that Claborn's objections are **OVERRULED**;

**IT IS FURTHER ORDERED** that the Court adopts the Report and Recommendation issued by the magistrate judge;

**IT IS FURTHER ORDERED** that Claborn's federal claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Claborn's state law claims are **DISMISSED WITHOUT PREJUDICE**.

**NEW ORLEANS, LOUISIANA**, this 18th day of November, 2013.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**